UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,       :
                                :
     -against-                  :        No. 09 Cr. 525 (JFK)
                                :        **Opinion and Order**
HAROLD LOPEZ,                   :
                                :
             Defendant.         :
------------------------------X

<u>APPEARANCES</u>

      <u>For the Government</u>:
           Preet Bharara
           U.S. Attorney for the Southern District of New York
                Of Counsel: Telemachus P. Kasulis
                        Daniel P. Chung

      <u>For Defendant</u>:
           Jonathan Bach
           Cooley LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court are requests by both parties for pre-trial rulings with respect to various types of evidence sought to be introduced at trial. For the reasons that follow, the Government's motion is granted in part. The Court will reserve judgment on Defendant's motion at the present time.

**I.  Background**

    In a single count superseding indictment dated February 19, 2010, Defendant Harold Lopez ("Lopez" or "Defendant") is charged with conspiracy to distribute one kilogram and more of heroin and 500 grams and more of cocaine from in or about September 2008 until August 2009. At trial scheduled to begin on October

1

4, 2010, the Government hopes to prove that Lopez participated in a distribution cell for an international heroin trafficking organization based in Colombia and Ecuador, whereby Lopez's group received shipments of heroin which it sold, along with powder cocaine, in the United States.  The cell then transferred the narcotics proceeds to Ecuador using wire transfers and money couriers.

The Government seeks to introduce either as direct proof of the narcotics conspiracy or pursuant to Rule 404(b) of the Federal Rules of Evidence:  (1) testimony from cooperating witnesses (co-defendants in the charged conspiracy) who participated in Ecuadorean heroin deals with Lopez prior to the timeframe charged in the superseding indictment; and (2) three prior narcotics arrests and other trafficking activities that occurred before 2008.  In conjunction with these prior arrests, the Government moves to preclude Lopez from introducing the fact that two of the narcotics charges were ultimately dismissed. Finally, the Government seeks to offer statements of co-conspirators pursuant to Rule 801(d)(2)(E).  Lopez opposes the motion in its entirety, and by letter dated July 15, 2010, moves to preclude the Government from cross-examining him about two convictions from 1993 should he decide to testify in his own defense.

## II.  Analysis

Evidence of an uncharged crime is not considered "other act" evidence if it:  (1) "arose out of the same transaction or series of transactions as the charged offense"; (2) "is inextricably intertwined with the evidence regarding the charged offense"; or (3) "is necessary to complete the story of the crime on trial."  United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) (internal quotations and alterations omitted); see United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (evidence of uncharged falsification of business inventory admitted to prove charged crime of making false statements to obtain a line of credit); United States v. Christie, No. 08 Cr. 1244, 2010 WL 286617, at *1 (S.D.N.Y. Jan. 14, 2010) (admitting as direct evidence of narcotics conspiracy testimony that defendant and cooperating witness imported cocaine, hashish, and marijuana into the United States prior to timeframe charged in the indictment).  This evidence may be admitted without regard to Rule 404(b) of the Federal Rules of Evidence and its attendant notice requirements and limiting instructions.  See United States v. Brand, No. 04 Cr. 194, 2005 WL 77055, at *3 (S.D.N.Y. Jan. 12, 2005).

However, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)."  United

States v. Nektalov, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).

Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).  The Second Circuit "follow[s] an inclusionary rule, allowing the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence."  United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994); see United States v. Brand, 467 F.3d 179, 196 (2d Cir. 2006); United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004).

In conspiracy cases, "other acts" evidence may be admitted under Rule 404(b) "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed."  United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000).  The prior bad acts may be of the same nature as the charged crime, such that the issue of relevance as background evidence is more clear cut. See United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992)

(affirming admission under Rule 404(b) of testimony of two co-conspirators regarding previous heroin transactions between them and the defendant in order to elucidate the background of the charged narcotics conspiracy and the relationship among the conspirators); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (affirming admission of Rule 404(b) evidence of prior cocaine transactions between co-conspirator and defendant where testimony about their pre-existing relationship "furthered the jury's understanding of how the instant transaction came about and their role in it").  However, the Court of Appeals has also upheld the introduction of evidence of prior bad acts dissimilar to the charged conduct, where the evidence would nevertheless establish "the development of the relationship" and "the basis for the trust" between co-conspirators.  United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009) (affirming admission of 404(b) evidence of prior gun sales between defendant and co-conspirator to provide background for crack cocaine conspiracy alleged in the indictment); see Williams, 205 F.3d at 33 (affirming admission under Rule 404(b) of evidence of defendant's participation with two co-conspirators in a marijuana deal, credit card fraud, and filing false assault charges as relevant background information for subsequent cocaine conspiracy charges); United States v. Pascarella, 84 F.3d 61, 73 (2d Cir. 1996) ("[F]or prior bad act evidence to be

admissible, the act need not be sufficiently similar that it approaches near identity with the elements of the offense charged. . . .   In contrast, evidence of wholly different acts has been held admissible to show the background of a conspiracy or the development of a relationship of trust between the participants." (internal quotations and citations omitted)).. Finally, even if prior bad act evidence may provide relevant background, it may be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.

### A.   Cooperating Witness Testimony

Although the superseding indictment covers conduct from September 2008 until August 2009, the Government alleges that the charged conspiracy originated with uncharged heroin trafficking activity that took place as early as 2005.  To that end, the Government proffers the testimony of three cooperating witnesses ("CW-1," "CW-2," and "CW-3") who participated in the distribution of Ecuadorean heroin and laundering of narcotics proceeds with Defendant prior to September 2008.  Specifically, CW-1 and CW-2 would testify that they supplied Defendant with Ecuadorean heroin from 2005 to 2006 at his residence at 32 Varet Street in Brooklyn.  CW-3 would testify that he or she assisted Defendant in processing and packaging heroin from about 2005 or

2006 until Defendant's arrest in April 2009 first at CW-3's residence in Brooklyn, and later at 92-14 88 Avenue in Queens. Both CW-2 and CW-3 would testify that they accompanied Lopez in picking up shipments of Ecuadorean heroin.  Finally, CW-2 would testify that he and Lopez were stopped on October 1, 2008 while driving in a car equipped with hidden compartments or "traps."

Defense counsel requests that the Court postpone its ruling on the admissibility of the cooperating witnesses' testimony until the Government provides 3500 material.  However, the Government's proffer in its reply brief sufficiently details the cooperating witnesses' testimony such that no delay is necessary.  Defendant's anticipated defense is that he did not participate in a conspiracy.  Thus, the testimony of the cooperating witnesses (Defendant's alleged co-conspirators in this case) that they engaged in the importation and distribution of Ecuadorean heroin with Defendant prior to and beyond 2008 is admissible as evidence that corroborates the existence of the instant conspiracy and the identity of its members.  See United States v. Romero-Padilla, 583 F.3d 126, 130 (2d Cir. 2009) (per curiam) (although evidence of defendant's previous plans with a co-conspirator to import narcotics into the United States through Mexico and the Dominican Republic "did not concern the charged conspiracy, it was relevant background evidence inasmuch as it corroborated the charge that [the co-conspirator] and

[defendant] were partners during the charged conspiracy" such that Rule 404(b) did not apply); <u>United States v. Canales</u>, No. 09 Cr. 976, 2010 WL 2505578, at *1 (S.D.N.Y. June 7, 2010) (in case involving conspiracy to throw away non-waste mail, "testimony regarding prior instances of mishandling of the mail is sufficiently intertwined with evidence regarding the charged offense to be probative of the existence of the conspiracy, including the relationship, if any, between [defendant] and her alleged co-conspirators"). The charged and uncharged narcotics conduct is remarkably similar. Moreover, CW-2 and CW-3 would testify as to heroin deals both prior to and during the time of the charged conspiracy; this testimony describes a long-term, continuous, and evolving relationship with Defendant that is "inextricably intertwined" with the charged conspiracy and would complete the jury's understanding of how the conspiracy came to be.

Additionally, the evidence is admissible to provide background for the development of the charged conspiracy and the relationship of the conspirators pursuant to Rule 404(b). The cooperating witnesses' testimony would explain to the jury how Defendant, CW-1, CW-2, and CW-3 met, how their operations were established, how the charged conspiracy was formed, and what their roles were in the conspiracy. As evidence of prior heroin deals with the cooperating witnesses is of the same nature as

the charged conduct, it is not so inflammatory or sensational
that its probative value is outweighed by any potential for
prejudice.  See Roldan-Zapata, 916 F.2d at 804.

### B.   Prior Arrests

By letter dated February 22, 2010, the Government provided
notice that it may offer at trial evidence of the facts
underlying Defendant's three prior arrests for narcotics-related
charges and unspecified narcotics trafficking activities prior
to 2008.

### 1.   October 7, 2005 Arrest

On October 7, 2005 officers of the New York City Police
Department ("NYPD") executed a search warrant for the basement
apartment at 32 Varet Street.  Defendant allegedly lived on the
second floor of that building.  The search of the basement
apartment uncovered heroin, crack cocaine, and a loaded handgun.
After observing Defendant enter and leave the building, the
officers placed him under arrest.  The charges relating to this
arrest were eventually dropped.

The Government's proffer regarding this arrest is somewhat
ambiguous; although the Government in passing refers to the
search as recovering heroin, cocaine, and a gun from Defendant's
residence, as best the Court can tell, these items were found in
another apartment in Defendant's building, not in Defendant's
apartment.  It is not clear whether the officers observed

Defendant entering and leaving the basement apartment or the main entrance to the building.  It does not appear that any narcotics or narcotics proceeds were found on Defendant's person.  The Government contends that evidence of this arrest would corroborate a cooperating witness' testimony that he delivered heroin in 2005 and 2006 to Defendant at an unspecified apartment located at 32 Varet Street.  However, absent some connection between Defendant and the basement apartment, the fact that NYPD officers recovered heroin in an apartment two floors below Defendant's residence in 2005 does not in any way establish that Defendant participated in a heroin conspiracy three years later.  See United States v. Kassir, No. 04 Cr. 356, 2009 WL 976821, at *3 (S.D.N.Y. Apr. 9, 2009) (defendant's prior attendance at jihad training camps not direct evidence of charge that he provided material support to a terrorist organization by attempting to establish a new jihad training camp because the uncharged conduct "is far more remote to the charged conduct in both time and place and is thus not essential to completing the story").  There is nothing from which the Court can determine any relation between the arrest and the charged conspiracy, much less that a jury would be confused about the charged conspiracy absent the arresting officer's testimony.  As the facts underlying the 2005 arrest are, at best, of questionable relevance, they are neither admissible as direct evidence of the

conspiracy nor to provide background for the charged conspiracy
under Rule 404(b).  Subject to change based on the evidence
presented at trial, the Court finds that the facts underlying
Defendant's October 7, 2005 arrest are not admissible.

### 2.    February 18, 2008 Arrest

On February 18, 2008, NYPD officers executed a search
warrant for the lower two floors of the premises at 92-14 88
Avenue in Queens.  The officers recovered heroin and heroin
cutting agents from the premises in which Defendant allegedly
resided.  Later that day, Defendant and his companion were
arrested while in possession of thousands of dollars in U.S.
currency and four cell phones.  Defendant ultimately entered a
misdemeanor guilty plea to the charges stemming from this
arrest.

"The fact that the Defendant may have committed similar . .
. acts in close temporal proximity to the charged crimes" is not
direct evidence of charged conduct where it "furnishes an
element of context, but it is certainly not crucial information
without which the jury will be confused."  United States v.
Townsend, No. 06 Cr. 34, 2007 WL 1288597, at *2 (S.D.N.Y. May 1,
2007), aff'd sub nom. United States v. Mercado, 573 F.3d 138 (2d
Cir. 2009) (internal quotation omitted).  This arrest took place
six months prior to the time of the charged conspiracy, and the
search recovered a relatively small amount of heroin from

Defendant's apartment which may not be indicative of the larger-scale Ecuadorean heroin operation allegedly involved in the charged conspiracy.  There is no indication that any of Defendant's co-conspirators also participated in the conduct leading up to the February 2008 arrest.  Thus, the arrest is not "inextricably intertwined" with the charged conspiracy such that it provides direct evidence of the relationship of the co-conspirators or is necessary to complete the story of the charged conspiracy.

However, the facts surrounding this arrest may corroborate the testimony of cooperating witnesses that Defendant used the Queens apartment to process and package heroin during the charged conspiracy.  Thus, the evidence is admissible under Rule 404(b) to provide background information about the operation of the alleged narcotics distribution cell.  There is no danger of unfair prejudice as the conduct underlying the prior arrest and conviction is the same as, or even less serious than, the heroin conspiracy, and is therefore not more inflammatory than the charged conduct.  The Government may introduce evidence of the facts underlying the February 1, 2008 arrest subject to a limiting instruction.

### 3.   October 1, 2008 Arrest

On October 1, 2008, NYPD officers stopped Defendant's car in Brooklyn for a traffic violation.  Defendant, a co-defendant in the charged conspiracy, and the female companion who was arrested with him in February of that year, were inside the car. An officer noticed a hinge on the car's radio console which he believed to be a "trap."  The officers found containers of an unknown substance in the "trap," and the three occupants of the car were arrested on suspicion of carrying a controlled substance.  Upon a more thorough search of the vehicle, NYPD officers found a second "trap" in the trunk of the car.  Lab tests later confirmed that the substance recovered from the containers in the "trap" was not an illegal drug, and the charges were dropped.

The fact that, during the time of the charged conspiracy, Defendant and a cooperating witness/co-conspirator were driving in a car outfitted with two "traps" commonly used to hide contraband items, including narcotics, provides evidence that a narcotics conspiracy existed and that Defendant and the cooperating witness were members of that conspiracy.  See United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy, however, is not an 'other' act within the meaning of Rule 404(b); rather it is part of the very act charged.").  The

Government may introduce evidence of the facts underlying this arrest without reference to Rule 404(b).

However, neither the fact of the arrest itself, nor the fact that charges were dismissed, is admissible.  The dismissal of state charges does not rebut the existence of a federal narcotics conspiracy; indeed, the charges may have been dropped for any number of reasons which have no bearing on Defendant's guilt.  Cf. United States v. Burrell, 43 F. App'x 403, 406-07 (2d Cir. 2002) ("[A] judgment of acquittal is not generally admissible to rebut inferences that may be drawn from other evidence, and the acquittal [does] not establish that [defendant] was not guilty."); United States v. Viserto, 596 F.2d 531, 537 (2d Cir. 1979).  Defendant may not introduce evidence of the disposition of these charges.

### 4.   Narcotics Trafficking Activities Prior to 2008

It appears that the Government's intent to introduce evidence of narcotics trafficking activities prior to 2008 refers to the testimony of the three cooperating witnesses about their heroin dealings with Defendant before the time of the charged conspiracy.  The Government's proffer in its reply brief provided sufficient detail about the anticipated testimony. This evidence, as discussed above, is admissible as direct evidence and as background evidence of the charged conspiracy pursuant to Rule 404(b).

### C.    Co-Conspirator Statements

The Government moves to introduce unspecified statements of
other members of the charged conspiracy regarding the role and
activities of the Defendant and others in the heroin
distribution/money laundering cell.  Rule 801(d)(2)(E) of the
Federal Rules of Evidence excepts from the bar against hearsay
"a statement by a coconspirator of a party during the course and
in furtherance of the conspiracy."  The Court reserves judgment
on the admissibility of co-conspirator statements until such
time as the Government identifies the relevant declarants and
has established by a preponderance of the evidence that "there
was a conspiracy involving the declarant and the nonoffering
party, and that the statement was made 'during the course and in
furtherance of the conspiracy.'"  Bourjaily v. United States,
483 U.S. 171, 175 (1987) (quoting Fed. R. Evid. 801(d)(2)(E)).

### D.    Cross-Examination Relating to 1993 Convictions

In 1993, Defendant was convicted of criminal possession of
a weapon and assault with intent to cause physical injury with a
weapon in connection with a shooting in a Brooklyn subway
station that occurred when he was eighteen years old.  Defendant
was sentenced to 5 to 15 years of imprisonment on the weapons
possession count and 28 months to 7 years on the assault count.
Defendant moves to preclude the Government from cross-examining

him about these convictions should he testify in his own defense.

Rule 609 allows for the impeachment of a criminal defendant's truthfulness with evidence of a conviction of a crime punishable by imprisonment in excess of one year if "the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1). At the Government's request, the Court will reserve judgment on this motion so that the prosecutors may further investigate these convictions. However, although the seriousness of these convictions may bear on Defendant's general lack of respect of the law, the Government should bear in mind this Court's prior determination that "unlawful possession of a firearm does not 'rest on dishonest conduct' and is not very probative of an untruthful character." United States v. Joe, No. 07 Cr. 734, 2008 WL 2810169, at *4 (S.D.N.Y. July 21, 2008) (quoting United States v. Estrada, 430 F.3d 606, 618 (2d Cir. 2005)).

### III. Conclusion

The Government's motion in limine is granted in part. Decision is reserved as to Defendant's motion to preclude.

**SO ORDERED.**

Dated:    **New York, New York**
          **September/ , 2010**

                                        _____
                                              **John F. Keenan**
                                        **United States District Judge**

16